IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Gomez-Ochoa,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Loretta E. Lynch, et al.,<br><br>　　　　　Respondents. | No. CV-16-01646-PHX-JJT (BSB)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Carlos Gomez-Ochoa, through counsel, has filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[1] (Doc. 22.) Respondents argue that the Amended Petition should be denied. (Doc. 24.) Petitioner has filed a Reply. (Doc. 25.) As discussed below, the Court recommends that the Amended Petition be denied.

**I.   Factual and Procedural History**

Petitioner is a native and citizen of Mexico who entered the United States on October 4, 1995. (Doc. 13, Ex. 1.) On April 15, 2015, Petitioner self-surrendered to the Phoenix Police Department after learning that he had an outstanding traffic warrant. (Doc. 13, Ex. 1.) Petitioner was transferred to the custody of Immigration Customs and

---

[1] Petitioner filed a Petition on May 26, 2016. (Doc. 1.) The government responded (Doc. 13), and Petitioner filed a reply. (Doc. 18.) Because Petitioner's reply included new allegations, the Court directed Petitioner to file an amended petition or to proceed only on the allegations in his Petition. (Doc. 20.) Petitioner filed an Amended Petition on November 9, 2016. (Doc. 22.) In addition to the briefing and exhibits filed in connection with the Amended Petition, the Court considers the exhibits filed with the original petition. (Docs. 1, 13, 18.)

Enforcement (ICE). (Doc. 13, Ex. 1.) On April 17, 2015, the Department of Homeland Security (DHS) commenced removal proceedings against Petitioner. (Doc. 13, Ex. 2.) Petitioner was served with a Notice to Appear (NTA), charging him with violating Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than designated by the Attorney General, and placing him in removal proceedings. (Doc. 13, Ex. 2.)

On May 1, 2015, an Immigration Judge (IJ) held a bond hearing. (Doc. 13, Ex. 4.) The IJ found Petitioner had failed to show by clear and convincing evidence that he was not a danger to the community and denied Petitioner's request for release. (Doc. 13, Exs. 3 and 4.) On June 1, 2015, Petitioner appealed the IJ's decision to the Board of Immigration Appeals (BIA). (Doc. 13, Ex. 5.) On August 11, 2015, the BIA affirmed the IJ's decision to deny bond, and dismissed Petitioner's appeal. (Doc. 13, Ex. 7.)

During these proceedings, on June 9, 2015, DHS withdrew the charges and allegations in the NTA, finding that Petitioner was admitted to the United States as a border crosser or nonimmigrant visitor on October 4, 1995, for a period not to exceed six months and remained for longer than six months without authorization. (Doc. 13, Ex. 6.) Therefore, DHS charged Petitioner as removable from the United States under 8 U.S.C. § 1227(a)(1)(B), as an alien who after admission as a nonimmigrant, remained in the United States for a time longer than permitted, in violation of the INA or any other law of the United States. (*Id.*)

On January 11, 2016, an IJ conducted a custody redetermination hearing pursuant to *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) (*Rodriquez III*), *cert. granted sub nom. Jennings v. Rodriquez*, 136 S. Ct. 2489 (2016).[2] (Doc. 13, Ex. 8.) The IJ found that

---

[2] In *Rodriguez III*, as further discussed below in Section II, the Ninth Circuit held that the government must provide periodic bond hearings every six months to allow aliens to challenge their continued detention. *Rodriguez III*, 804 F.3d at 1089. At these bond hearings, the government "bears an intermediate burden of proof in demonstrating danger to the community or risk of flight — to ensure that after a lengthy period of detention, the government continues to have a legitimate interest in further deprivation of an individual's liberty." *Id.* at 1090.

1  DHS met its burden of demonstrating by clear and convincing evidence that Petitioner
2  presented a danger to the community. (*Id*.) On January 19, 2016, Petitioner appealed the
3  IJ's denial of a request for change in custody to the BIA. (Doc, 13, Ex. 9.) On April 25,
4  2016, the BIA affirmed the IJ's decision to deny bond, and dismissed Petitioner's appeal.
5  (Doc, 13, Ex.10.)

6  On September 15, 2016, an IJ conducted a second custody redetermination hearing
7  pursuant to *Rodriguez III*, 804 F.3d 1060. (Doc. 19, Ex. 3.) The IJ denied Petitioner's
8  request for change in custody finding that DHS had met its burden of demonstrating by
9  clear and convincing evidence that Petitioner presented a danger to the community. (*Id.*)
10 On October 13, 2016, Petitioner appealed the IJ's denial of a request for change in
11 custody to the BIA. (Doc, 13, Ex. 11.) To date, there is no evidence in the record before
12 the Court indicating that the BIA has issued a decision on the October 13, 2016 appeal.
13 (Doc. 24 at 3-4.)

14 On November 9, 2016, Petitioner filed an Amended Petition for Writ of Habeas
15 Corpus in this Court. (Doc. 22.) Petitioner contends the IJ committed legal errors during
16 the bond redetermination hearings in January and September 2016 in violation of
17 Petitioner's due process rights. (*Id*.) Petitioner asserts that his procedural due process
18 rights were violated because: (1) the IJ did not identify and apply the correct standard and
19 burden of proof (Doc. 22 at 16, 18); (2) the IJ did not properly consider Petitioner's
20 criminal history and the evidence he presented (Doc. 22 at 20-23); (3) the IJ did not
21 consider the duration of Petitioner's detention (Doc. 22 at 16); and (4) the IJ did not
22 consider release conditions. (Doc. 22 at 24.) Petitioner also asserts that his continued
23 detention violates his right to substantive due process. (Doc. 22 at 28.) As discussed
24 below, Petitioner is not entitled to relief on these claims.

25 **II.   Exhaustion of Administrative Remedies**

26 Petitioner's claims are based on the IJ's denial of bond in January and September
27 2016. The parties agree that Petitioner's claims related to the January 2016 bond
28 redetermination hearing are properly before the Court. However, Respondents argue that

Petitioner's claims related to the September 2016 bond decision are not properly before the Court because Petitioner did not exhaust administrative remedies on those claims before filing the Amended Petition in this Court. As discussed in Section I above, Petitioner appealed the IJ's September 15, 2016 bond decision to the BIA. However, he filed the pending Amended Petition without waiting for a ruling from the BIA. Respondents argue that the Court should dismiss claims related to the September 15, 2016 bond redetermination hearing for failure to exhaust administrative remedies. (Doc. 24 at 5.) As discussed below, the Court agrees.

Petitioner seeks habeas relief under 28 U.S.C. § 2241, which "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). Nonetheless, courts "require, as a prudential matter, that habeas petitioners exhaust available judicial remedies before seeking relief under § 2241." *Id.* Although courts "have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered." *Id.* Prudential considerations that weigh in favor of requiring agency exhaustion are whether: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003).

Under similar circumstances, the Ninth Circuit held that a petitioner must exhaust remedies by appealing an IJ's bond determination to the BIA before seeking habeas relief. *See Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011). In *Leonardo*, the petitioner received a bond hearing and an IJ denied bond. Rather than appeal the IJ's decision to the BIA, the petitioner "pursued habeas review of the IJ's bond determination." *Id.* The court found such a short cut "improper," and held that the

petitioner "should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." *Id.* at 1160.

Petitioner does not address the factors for waiving prudential exhaustion. (Doc. 22 at 27; Doc. 25 at 3.) Rather he argues that it is "factually impossible" to exhaust administrative remedies on bond redetermination hearings that are conducted pursuant to *Rodriguez III* because that decision made "the matter of bond continuously ongoing." (*Id.* at 4.) Petitioner's argument fails because, as demonstrated by Petitioner's appeals to the BIA of the IJ's bond determinations, each bond determination is subject to separate appeal and review before the BIA. Under *Rodriquez III*, a detainee may be accorded several bond hearings, but these repeated hearings do not preclude the detainee from seeking BIA review of each bond determination.

Thus, Petitioner has not demonstrated "grounds for excusing the exhaustion requirement." *See Leonardo*, 646 F.3d at 1161   Additionally, if the BIA reverses the IJ's September 15, 2016 decision, a habeas proceeding related to that decision will be unnecessary. Therefore, the Court recommends that Petitioner's challenge to the IJ's September 15, 2016 decision be dismissed based on failure to exhaust administrative remedies. *See Pianka v. DeRosa*, 2016 WL 7372909, at * 3 (D. Ariz. Dec. 19, 2016) (requiring petitioner to wait for the BIA's final determination of his appeal before seeking habeas corpus review noting that the BIA's ruling could make habeas corpus review unnecessary); *Manzanarez v. Holder*, 2013 WL 5607167, at *5 (D. Hawaii Oct. 11, 2013) (denying habeas corpus relief based on petitioner's failure to exhaust administrative remedies after denial of relief in a bond redetermination hearing). However, as discussed below, even if Petitioner had exhausted administrative remedies for his claims related to the IJ's September 15, 2016 bond decision, those claims would fail.

### III. Bond Hearings

Title 8 U.S.C. § 1226(a) authorizes the arrest and detention of aliens "pending a decision on whether [they are] to be removed from the United States."

8 U.S.C. § 1226(a).  Under Section 1226(a), the government has discretion to either detain arrested aliens or release them on a bond or "conditional parole."  *Id.*  At these initial bond hearings, the detainee has the burden of establishing "that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *In re Juan Francisco Guerra*, 24 I. & N. Dec. 37, 2006 WL 3337627, at *3 (Sept. 28, 2006).  "After an initial bond redetermination," the detainee's release from custody "shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."  8 C.F.R. § 1003.19(e).

However, the Ninth Circuit requires the government to automatically conduct bond hearings for individuals detained under Section 1226(a) every six months "so that [they] may challenge their continued detention as the period of . . . confinement grows." *Rodriguez III*, 804 F.3d at 1085, 1089.  At these *Rodriguez* hearings, the government bears the burden to prove "by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *Id.* at 1087 (internal citation and quotation marks omitted).  This is "an intermediate burden of proof that is more than a preponderance of the evidence but less than proof beyond a reasonable doubt."  *Id.*

During a *Rodriguez* hearing, an IJ considers the factors set forth in *Guerra* and adopted in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).  *Id.* at 1069.  In particular to assess an alien's dangerousness, the IJ considers "'the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'"  *Id.* (citing *Singh*, 638 F.3d at 1206).

### A. Petitioner's January 11, 2016 Hearing

At the January 11, 2016 custody redetermination hearing, or *Rodriguez* hearing, the IJ denied bond on the ground that Petitioner was a danger to the community. (Doc. 13, Ex. 8 at 2.)  On February 2, 2016, the IJ issued a written Memorandum Order memorializing the denial of bond.  (*Id.*)  The IJ set forth the procedural history of Petitioner's detention.  (*Id.* at 1-2.)  The IJ noted that Petitioner was taken into DHS

custody on or around April 17, 2015, and identified each bond proceeding that had been held since that date.  (*Id.*)  The IJ noted that aliens who have been detained under "§§ 235(b), 236(c), 236(a) of the [INA] for longer than six months [are] eligible for a bond hearing pursuant to *Rodriguez III*, 804 F.3d at 1090." (*Id.* at 3.)  The IJ concluded that because Petitioner had been detained since April, 2015, he was eligible for a custody redetermination hearing pursuant to *Rodriguez III*.  (*Id.*)

The IJ noted that "DHS bears the burden of establishing, by 'clear and convincing evidence,' that the [Petitioner] should not be released because he is a danger or a flight risk." (*Id.* (citing *Singh*, 638 F.3d at 1203-04).)  The IJ also stated that in making a bond determination, an IJ "may rely 'upon any information that is available to the [IJ] or that is presented to him or her by the alien or the Service.'" (Doc. 13, Ex. 8 at 3 (quoting 8 C.F.R. § 1003.19 (2015).)  The IJ concluded that the "Department has met its burden of demonstrating, by clear and convincing evidence, that the [Petitioner] poses a danger to the community." (Doc. 13, Ex. 8 at 4.)

In reaching this conclusion, the IJ noted Petitioner's "numerous encounters with law enforcement." (*Id.* at 3.)  In particular, an arrest for Driving Under the Influence (DUI) on January 12, 2014, which led to a conviction for extreme DUI on May 28, 2014, with a blood alcohol level greater than .20.  (*Id.*)  The IJ also noted that Petitioner was sentenced to 45 days in jail. (Doc. 13, Ex. 8 at 3; Doc. 13, Ex. 1.)  Petitioner was again arrested for DUI on November 1, 2014.  (Doc. 13, Ex. 8 at 3.)  He was convicted on January 26, 2015, and was sentenced to ten days in jail and a fine. (Doc. 13, Ex. 8 at 3; Doc. 13, Ex. 1.)  The IJ noted that Petitioner's second DUI arrest occurred while Petitioner "was taking a DUI class mandated as a result of his May 28, 2014 conviction." (Doc. 13, Ex. 8 at 3.)  The IJ also noted that on April 15, 2015, Petitioner was convicted of driving on a suspended, revoked, canceled, or refused drivers' license, and for violating a promise to appear in court. (*Id.*)

The IJ found that the recency of Petitioner's second DUI conviction, which occurred while Petitioner was taking a DUI class, indicated that Petitioner "does not

appreciate the seriousness of DUI." (Doc. 13, Ex. 8 at 4.)  The IJ noted the dangers of drunk driving, the obligation of drivers to adhere to safety laws, and that when a driver breaks those laws by driving while impaired, he "*affirmatively and voluntarily* places members of society in danger." *Id.* (emphasis in original).  The IJ concluded that "drunk driving is serious." *Id.*

The IJ further found that Petitioner's continued disregard for the law by driving on a suspended, revoked, canceled, or refused license after two DUI convictions, and violating his promise to appear in court, supported a finding that Petitioner was a danger to the community. (*Id.*) The IJ noted that Petitioner exhibited an unwillingness to learn from his mistakes when he committed his second DUI while attending a DUI class. (*Id.*) Based on these facts, the IJ found that "the record reflects a high likelihood of recidivism." (*Id.*) The IJ considered Petitioner's completion of two rehabilitative courses while in immigration custody. (*Id.*) The IJ stated that Petitioner's efforts were "commendable," but did not take away from Petitioner's prior convictions or alleviate the IJ's concerns that Petitioner would be a danger to society if released. (*Id.*)

The IJ concluded that based on Petitioner's "criminal history of serious offenses" and Petitioner's "demonstrated willingness to repeatedly disregard the laws of this country," DHS had "met its burden of demonstrating, by clear and convincing evidence, that [Petitioner] poses a danger to the community." (*Id.*) Accordingly, the IJ determined that Petitioner "shall not be released." (*Id.*)

### B. Petitioner's September 15, 2016 Hearing

The second hearing at issue, for which Petitioner has not exhausted his administrative remedies, began on August 23, 2016, and was continued to September 15, 2016. (Doc. 24, Ex. 2.)  On September 15, 2016, the IJ denied Petitioner's request for change in custody status finding that Petitioner was a danger to the community. (Doc. 18-1 at 18-19.)  On October 21, 2016, the IJ issued a written decision. (Doc. 24, Ex. 2.)

1    The IJ set forth the procedural history of Petitioner's detention. (*Id.*) The IJ stated that "as [Petitioner] was detained pursuant to § 236(a) of the [INA], and more than 180 days have passed since his last *Rodriguez* hearing," Petitioner was eligible for a custody redetermination hearing, and the IJ had jurisdiction to hold another hearing. (*Id.* at 2.) The IJ noted the bond hearing requirements and the burden of proof. (*Id.*) The IJ considered information provided by both DHS and Petitioner. (*Id.* at 2-3.) The IJ again noted Petitioner's "numerous encounters with law enforcement," including his arrest and conviction for extreme DUI on May 28, 2014, and his subsequent arrest and conviction for DUI on January 26, 2015, which occurred while Petitioner was taking a DUI class mandated by the first conviction. (*Id.* at 2-3.) The IJ also noted that Petitioner was convicted on April 15, 2015, for driving on a suspended, revoked, canceled, or refused drivers' license, and for violating a promise to appear in court. (*Id.*) Although Petitioner asserts that he served only eight days in jail for the two DUI convictions, (Doc. 22 at 7), the record shows that he was sentenced to 45 days and 10 days in jail, respectively, for the two DUI convictions (Doc. 13, Ex. 1 at 2-4), as the IJ noted. (Doc. 24, Ex. 2 at 3.)

As he had at the earlier hearing, the IJ found that the recency of Petitioner's second DUI conviction, which occurred while Petitioner was taking a DUI class, indicated that Petitioner did not appreciate the seriousness of DUI. (*Id.*) The IJ also again concluded that drunk driving is serious. (*Id.*) The IJ found again that Petitioner's continued disregard for the law supported a finding that he was a danger to the community, and that this unwillingness to learn from prior mistakes "reflects a high likelihood of recidivism." (*Id.*) The IJ considered Petitioner's evidence that, since his last custody redetermination hearing, he had completed two rehabilitative courses. (*Id.*) The IJ also noted that Petitioner's I-360 petition had been approved. (*Id.*) However, the IJ concluded that Petitioner's efforts at rehabilitation "do not take away from [his] previous convictions and do not rid the [IJ] of [his] concerns that the [Petitioner] would be a danger if released from custody." (*Id.*)

The IJ concluded that DHS "met its burden of demonstrating, by clear and convincing evidence, that [Petitioner] poses a danger to the community" based on Petitioner's "criminal history of serious offenses, and [his] demonstrated willingness to repeatedly disregard the laws of this country[.]" (*Id.* at 3-4.) Therefore, the IJ denied Petitioner's request for change in custody status. (*Id.* at 4.)

**IV. District Court Review of Bond Determinations**

Under § 1226(e), a district court does not have jurisdiction to consider challenges to an IJ's discretionary judgment regarding the detention or release of an alien. *See* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."); *see also Prieto–Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008) ("discretionary decisions granting or denying bond are not subject to judicial review"). Therefore, this Court does not have jurisdiction over Petitioner's claim that the IJ's decisions to detain him in January and September 2016 were based on an erroneous determination that he is a danger to the community. (Doc. 22 at 18.)

However, a district court may review bond hearing determinations for constitutional claims and legal error. *See Singh*, 638 F.3d at 1200. As set forth below, Petitioner's argument that his procedural and substantive due process rights were violated during the bond redetermination hearings are unsupported in the record and lack merit. Therefore, the Court recommends that the Amended Petition be denied.

**A. Procedural Due Process Claims**

Petitioner argues that his procedural due process rights were violated during the custody redetermination hearings. (Doc. 22.) In the heading of Section II of the Amended Petition, Petitioner asserts that DHS did not meet its burden of establishing by clear and convincing evidence that Petitioner's prolonged detention was necessary. (Doc. 22 at 18.) The subheading, II.a, restates this claim as "[t]he IJ misapplied the

standard of proof" by concluding that it was met. (*Id.*) As set for the below, the IJ identified and applied the proper standard and burden of proof.

### 1. The Standard and Burden of Proof

The standard and burden of proof that applies in custody redetermination hearings is set forth in *Rodriguez III,* 804 F.3d at 1087, and *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). That standard requires the government to show by clear and convincing evidence that an alien is a flight risk or danger to the community. *Rodriguez III*, 804 F.3d at 1087. The IJ identified and applied that standard in the January and September 2016 hearings. (Doc. 13, Ex. 8; Doc. 24, Ex. 2.) As set forth in Sections III.A and III.B above, the IJ considered the evidence that Petitioner had completed two additional rehabilitative courses since his earlier bond hearing, and that his I-360 has been approved. (Doc. 13, Ex. 8 at 4; Doc. 24, Ex. 2 at 3.) However, the IJ concluded that Petitioner's efforts at rehabilitation did "not take away from [his] previous convictions and [did] not rid the [IJ] of [his] concerns that the [Petitioner] would be a danger if released from custody." (Doc. 13, Ex. 8 at 4; Doc. 24, Ex. 2 at 3.)

The IJ then concluded that DHS "has met its burden of demonstrating, by clear and convincing evidence, that [Petitioner] poses a danger to the community" based on Petitioner's "criminal history of serious offenses, and [his] demonstrated willingness to repeatedly disregard the laws of this country[.]" (Doc. 13, Ex. 8 at 3-4; Doc. 24, Ex. 2 at 3-4.) Therefore, the IJ denied Petitioner's request for change in his custody status. (Doc. 13, Ex. 8 at 4; Doc. 24, Ex. 2 at 4.) Based on this record, the Court concludes that the IJ identified and applied the applicable standard and burden of proof.

In his Amended Petition, Petitioner also appears to assert that the IJ was required to make a separate finding that Petitioner's continued prolonged detention was necessary. (Doc. 22 at 16.) Such a finding is not required. The Ninth Circuit has held that aliens detained under certain provisions of the INA, and "who are in prolonged detention [shall be provided] with bond hearings at which the government bears the burden of proving by clear and convincing evidence that the [alien] is a danger to the community or a flight

risk." *Rodriguez III*, 804 F.3d at 1074. This hearing is "to establish whether continued detention is necessary because [the alien] would pose a danger to the community or a flight risk upon release." *Id*. at 1085 (citation omitted). In *Rodriguez III,* the court further explained that the burden of showing danger to the community or risk of flight "ensure[s] that after a lengthy period of detention, the government continues to have a legitimate interest in the further deprivation of an individual's liberty." *Id.* at 1090. Clear and convincing evidence that an alien is a danger to the community or flight risk is sufficient to support continued detention. *See id.*

As the IJ found in both bond redetermination hearings, the government met that burden by showing by clear and convincing evidence that Petitioner was a danger to the community. (Doc. 13, Ex. 8 at 4; Doc. 24, Ex. 2 at 3-4.) Contrary to Petitioner's assertion (Doc. 22 at 18, 21), overwhelming evidence is not required to satisfy the clear and convincing standard. "Clear and convincing" is an "intermediate burden of proof." *Rodriguez III*, 804 F.3d at 1090. It is above "the lower preponderance of the evidence standard," *Singh*, 638 F.3d at 1204, but "a lower burden of proof than that required to sustain a criminal charge." *Rodriguez III*, 804 F.3d at 1071.

Therefore, the Court concludes that the IJ identified and applied the correct standard and burden of proof and reasonably concluded that the DHS met its burden. Therefore, Petitioner is not entitled to relief on his claim that the IJ violated due process by misidentifying and misapplying the standard and burden of proof. The IJ committed no error in violation of Petitioner's rights, and this Court cannot review the discretionary decision to deny bond. *See* 8 U.S.C. § 1226(e).

## 2. The IJ's Consideration of Petitioner's Criminal Record

In the Amended Petition, Petitioner also argues that his criminal history does not justify a finding of danger. (Doc. 22 at 21 ("[T]here is nothing in Petitioner's conduct that connotes a 'highly probable' danger.").) Petitioner also argues that the IJ did not properly weigh or consider information that he provided. (Doc. 22 at 21.)

The Ninth Circuit has stated that criminal history alone may not always be sufficient to justify the denial of bond on the basis of dangerousness. *Singh*, 638 F.3d at 1206. Rather, the IJ must consider the recency and severity of the criminal history offenses. *Id.* An IJ may deny bond on the basis of criminal history "if he makes sufficient factual findings." *Id.* An IJ "has broad discretion in deciding the factors that he or she may consider in custody redeterminations [and] may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 2006 WL 3337627, at *4.

Here, the IJ considered the recency and severity of Petitioner's criminal activity, including that he had multiple arrests and convictions. (Doc. 13, Ex. 8 at 3-4; Doc. 24, Ex. 2 at 2-3.) The IJ also emphasized the dangerousness of driving while under the influence. (Doc. 13, Ex. 8 at 4; Doc. 24, Ex. 2 at 3.) The IJ noted that Petitioner's second DUI arrest occurred while he was taking a mandated DUI class. (Doc. 13, Ex. 8 at 3; Doc. 24, Ex. 2 at 3.) The IJ also considered Petitioner's continued disregard for the law by driving on a suspended license, and violating a promise to appear in court. (Doc. 13, Ex. 8 at 3; Doc. 24, Ex. 2 at 3.) The IJ concluded that those factors supported a finding that Petitioner was a danger to the community. (Doc. 13, Ex. 8 at 3-4; Doc. 24, Ex. 2 at 3-4.)

Thus, the IJ did not consider Petitioner's "criminal history alone" in reaching his conclusion. Rather, he considered the nature of Petitioner's criminal history, made sufficient factual findings about Petitioner's criminal history, and concluded that the government met its burden of demonstrating by clear and convincing evidence that Petitioner posed a danger to the community and, therefore, should not be released. (Doc. 13, Ex. 8 at 3-4; Doc. 24, Ex. 2 at 3-4.)

In addition, the IJ cited *Begay v. United States*, 553 U.S. 137 (2008) to support his decision. (Doc. 13, Ex. 8 at 4; Doc. 24, Ex. 2 at 3.) Specifically, the IJ cited *Begay* for the proposition that "[d]runk driving is an extremely dangerous crime." (Doc. 13, Ex. 8 at 4 (citing *Begay*, 553 U.S. at 141); Doc. 24, Ex. 2 at 3 (citing *Begay*, 553 U.S. at 141).)

Petitioner argues that his case is distinguishable from *Begay* because Begay had twelve DUI convictions and an arrest for threatening his aunt and sister with a rifle. (Doc. 22 at 23.) As the government argues, drunk driving is dangerous regardless of the number of times a person has been convicted for drunk driving. The Ninth Circuit has stated that "[d]riving while intoxicated is despicable . . . [and] reflects a willful disregard for the law and a reckless indifference to the safety of others." *Marmolejo-Campos v. Gonzalez*, 503 F.3d 922, 926 (9th Cir. 2007). Therefore, Petitioner's cannot distinguish *Begay* based on the number of Begay's DUI convictions and his additional violent conduct. The IJ did not violate due process by concluding that DUI is a serious offense, and by considering Petitioner's criminal history of DUI, and some of the circumstances related to those convictions, in finding him a danger to the community.

Petitioner also argues that the IJ incorrectly identified the date of Petitioner's second DUI. (Doc. 22 at 23.) The IJ identified the date of Petitioner's second DUI conviction as January 26, 2015. (Doc. Doc. 13, Ex. 8 at 4.) Petitioner argues that although his second DUI conviction was on January 26, 2015, the incident giving rise to that conviction occurred three months earlier, in November 2014. (Doc. 22 at 23.) Therefore, Petitioner argues that the IJ incorrectly relied upon the "recency" of his second DUI conviction at the bond hearings.

The Court, however, finds that Petitioner's DUI conviction in January 26, 2015, based on conduct that occurred three months earlier, was sufficiently close in time to the bond hearings for the IJ to find that the recency and repetitive nature of Petitioner's DUI convictions supported a conclusion that he did not appreciate the seriousness of DUI. Additionally, the three month time difference does not affect the sufficiency of the government's showing. *See Becerra-Jaime v. Clark*, 2016 WL 1211852, at *2 (W.D. Wash. Mar. 1, 2016) (finding no constitutional or legal error in custody redetermination hearing when the IJ determined that petitioner presented a danger to the community based on two DUI convictions, including one that occurred two years before the bond hearing).

- 14 -

The IJ also considered evidence that Petitioner had completed rehabilitation courses while in custody. (Doc. 13, Ex. 8 at 4; Doc. 24, Ex. 2 at 4.) The IJ then weighed that evidence against Petitioner's criminal history and concluded that it did "not take away from [Petitioner's] previous convictions and [did] not rid the [IJ] of [his] concerns that the [Petitioner] would be a danger if released from custody." (Doc. 13, Ex. 8 at 4; Doc. 24, Ex. 2 at 4.) The record reflects that the IJ properly considered evidence related to the *Guerra* factors. Petitioner has not established a legal or constitutional error based on the IJ's consideration of the evidence at the custody redetermination hearings.

### 3. The Length of Petitioner's Detention

Petitioner argues that the IJ violated his right to due process because he "did not consider the length of Petitioner's detention[.]" (Doc. 22 at 16); *see Rodriguez III*, 804 F.3d at 1089. The record, however, reflects that at both hearings the IJ considered the length of Petitioner's detention. (Doc. 13, Ex. 8 at 1-2; Doc. 24, Ex. 2 at 1-2.)

The IJ discussed the requirement under *Rodriguez III* that a bond determination hearing must be held after a petitioner had been detained for more than six months. (Doc. 13, Ex. 8 at 2; Doc. 24, Ex. 2 at 2.) The IJ found that Petitioner was eligible for *Rodriguez* hearings based on the length of his detention. (*Id.*) Therefore, the IJ considered the length of Petitioner's detention in concluding that Petitioner was entitled to a bond redetermination hearing. (*Id.*) As discussed in Section IV.A, the IJ correctly found that DHS had the burden to show by clear and convincing evidence that Petitioner was a danger or flight risk. *See Rodriguez III*, 804 F.3d at 1074. Such a showing justified Petitioner's continued detention even after a prolonged period of detention. *Id.* Petitioner has not shown that he is entitled to relief based on his claim that the IJ failed to consider the length of his detention.

### 4. Consideration of Release Conditions

Petitioner argues that the IJ failed to consider conditions of release. (Doc. 22 at 24.) The IJ did not consider conditions of release. (Doc. 13, Ex. 8; Doc. 24, Ex. 2.) However, the IJ was not required to do so because he found that Petitioner should remain

- 15 -

in custody because the government had met its burden of showing that Petitioner was a danger.

Petitioner cites *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), for the proposition that in a "bond hearing held for the purpose of evaluating the necessity of detention, IJs must consider less restrictive alternatives." (Doc. 22 at 24.) Petitioner, however, fails to note that in this part of the *Zadvydas* decision, the Court was addressing the appropriate procedure when "continued detention [is] unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700. The Court found that when continued detention is unreasonable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id*. In *Zadvydas,* the Court found that if continued detention is no longer authorized, then it is appropriate to consider different forms of supervised release. *Id.* Here, the IJ did not find that Petitioner's continued detention was unreasonable and therefore did not consider conditions of release.

Petitioner also cites *Rodriguez III* in support of his assertion that the IJ should have considered conditions of release. (Doc. 22 at 25.) However, *Rodriguez III* states that IJs should consider such conditions "unless the government satisfied its burden of justifying continued detention." *Rodriguez III*, 804 F.3d at 1087 (quotation marks and citation omitted). In this matter, the government satisfied its burden of showing by clear and convincing evidence that Petitioner was a danger to the community, thus justifying further detention. *Id.*

**B.  Substantive Due Process Claim**

Petitioner also asks the Court to declare that his continued detention violates his substantive due process rights. (Doc. 22 at 28.) However, Petitioner has not established a violation of his rights. In *Zadvydas,* the Supreme Court expressed its concern that indefinite detention would violate the Constitution:

> [a] statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause

> forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects.

*Zadvydas,* 533 U.S. at 690 (citation omitted, brackets and ellipses in original).

The Ninth Circuit requires that aliens detained pursuant to 8 U.S.C. §§ 1225(b), 1226(c) and 1226(a), for more than six months, receive bond hearings. *See Rodriguez III*, 804 F.3d at 1079, 1084, and 1085. These hearings, with the procedural requirements set forth in *Singh*, provide the necessary due process. Petitioner has received *Rodriguez* hearings. His continued detention ordered after *Rodriguez* hearings does not violate his substantive due process rights.

## V. Conclusion

Petitioner failed to exhaust his administrative remedies with regard to the September 15, 2016 bond determination. Therefore, Petitioner's claims related to that hearing should be dismissed for failure to exhaust. Alternatively, Petitioner is not entitled to relief related to the IJ's January or September 2016 bond decisions because he received *Rodriguez* hearings, which satisfied the requirements of procedural due process. In addition, Petitioner's continued detention does not violate his right to substantive due process. Therefore, the Amended Petition should be denied.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 22) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the

Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 8th day of February, 2017.

_____
Bridget S. Bade
United States Magistrate Judge